Leopold Lee PEDRAZA,
Plaintiff–Appellant,

v.

Dalton G. MEYER, et al.,
Defendants–Appellees.

No. 89–2446.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1990.

---

Leopold Lee Pedraza, Huntsville, Tex., pro se.

R.D. Cullen, Mike Johnson, George J. Filley, III, Dist. Atty., Victoria, Tex., for defendants-appellees.

Before CLARK, Chief Judge, THORNBERRY and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Leopold Lee Pedraza brings this section 1983 suit *pro se*, alleging that while being held in the Victoria County Jail he was deprived of various constitutional rights. Following an evidentiary hearing, the magistrate recommended that all of Pedraza's claims be dismissed as frivolous. The district court adopted the magistrate's findings for the most part and eventually dismissed the entire suit pursuant to 28 U.S.C. § 1915(d). Essentially for the reasons stated in the court's Memorandum Opinion, we affirm the district court's judgment as to all but one of Pedraza's claims. We vacate the judgment as to the Eighth Amendment [1] inadequate-medical-attention claim and remand the issue to the district court for a summary judgment hearing and trial of any disputed material issues of fact. Only two of Pedraza's other claims merit discussion here: denial of religious services and improper disciplinary proceedings.

We have held that prison officials have a duty, at a minimum, not to be "deliberately indifferent" to a prisoner's serious medical condition. *Partridge v. Two Unknown Police Officers of Houston*, 791 F.2d 1182, 1187 (5th Cir.1986) (citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Under the Eighth Amendment and due process clause of the Fourteenth Amendment, "pretrial detainees are entitled to reasonable medical care unless the failure to supply the medical care is reasonably related to a legitimate governmental objective." *Cupit v. Jones*, 835 F.2d 82, 85 (5th Cir.1987). Pedraza claims that, after being arrested on July 3rd, he received no medical attention for his withdrawal symptoms until July 7th, when, according to Pedraza, Prison Nurse

---

1. Pedraza also alleges an equal protection violation because of the alleged denial of medical treatment. However, Pedraza offers no specific evidence that his medical treatment was different from that received by any other prisoner in his circumstances. He merely alleges generally and vaguely that non-drug-addicts received better medical treatment. The district court correctly dismissed as frivolous such an unsubstantiated claim.

Michael Pfeil came by and looked at Pedraza through the bars. According to Pedraza, Pfeil said that, because the withdrawal pain had not yet killed him, a few more days without treatment would probably not either and that, because Pedraza was "nothin' but a drug addict," no immediate treatment would be administered. Pedraza on appeal seems to concede that he received fruit cocktail and sweetened tea, but argues that those were part of all prisoners' normal diet. Pedraza also admits that he began receiving valium on July 8th.

Apparently because, based on the pleadings and on the tapes from the *Spears* hearing, the district judge found Pedraza's story not credible, he dismissed Pedraza's inadequate-medical-attention claim as frivolous pursuant to section 1915(d) in accordance with the recommendation of the magistrate. The court cited *Cay v. Estelle*, 789 F.2d 318 (5th Cir.1986) to support its authority to make credibility determinations for the purpose of determining the frivolousness of a claim. In *Cay* we restated the standards for dismissing an *in forma pauperis* claim pursuant to section 1915(d): "if (1) the claim's realistic chance of ultimate success is slight; [or] (2) the claim has no arguable basis in law and fact." *Id.* at 326.[2] We went on to conclude that

> credibility assessments are within the sound discretion of a district court making a determination of frivolousness. That discretion is limited, however, by the purpose of a § 1915(d) determination. District courts must remember that they are only determining whether a suit is frivolous, not deciding the case on the merits.... [W]here witnesses can be observed and their testimony on direct and cross-examination compared, such as in a *Spears* hearing, credibility may be a

factor only to the extent that a district court considers a complainant's change of position when exposed to interrogation or conflicting evidence, major internal inconsistencies in a witness's testimony, or substantial conflicts between the testimony of supporting witnesses.

*Id.* at 326–27.

In this case, the district court stated that Pedraza's allegations were implausible and that he changed his story when interrogated. However, Pedraza's claim that the prison personnel essentially ignored his condition for several days is, at least, not contradicted by the portion of official prison medical records that was in the record.[3] Thus the claim does not appear to be without basis in law or in fact and is certainly not "beyond credulity." *James v. Alfred*, 835 F.2d 605, 606 n. 1 (5th Cir.1988). Moreover, we have held that

> if a prisoner's version of the facts underpinning a civil rights action—as contained in his complaint and elaborated upon, if necessary, in a *Spears* hearing—is inherently plausible and internally consistent, a court may not for purposes of a § 1915(d) dismissal simply choose to believe conflicting material facts alleged by the defendants. It is only for the ultimate trier of fact to decide which party is more believable.

*Wesson v. Oglesby*, 910 F.2d 278, 282 (5th Cir.1990) (citation omitted). Therefore, despite the limited discretion that *Cay* gives to trial judges to determine credibility in the context of section 1915(d) cases, we return this issue to the district to proceed with a trial on the merits of the claim. Of course, if the trial court should at any point find that no material factual issue is raised, then he should dispose of the case under Fed.R.Civ.P. 56. Accordingly, we vacate

---

**2.** The *Cay* test also included a third alternative: "(3) if it is clear that the plaintiff can prove no set of facts in support of his claim." 789 F.2d at 326. However, this alternative was rendered invalid by the Supreme Court in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 1834, 104 L.Ed.2d 338 (holding "that a complaint filed *in forma pauperis* is not automatically frivolous within the meaning of § 1915(d) because it fails to state a claim"). *See also Pugh v. Parish of St. Tammany*, 875 F.2d 436, 438 (5th Cir.1989).

**3.** There is some contradictory evidence, however. According to the special report compiled by the defendants, Pfeil advised the jailers on July 3rd to give Pedraza fruit cocktail and extra-sweet iced tea. It also states that, according to the jailers, Pedraza showed no visible symptoms of withdrawal other than his complaints.

the district court's holding as to Pedraza's inadequate-medical-assistance claim and remand for proceedings consistent with this opinion.

■ Pedraza also alleges that he was denied a reasonable opportunity to attend religious services while he was held at the jail. According to uncontested portions of the record, however, convicted prisoners awaiting transfer, such as Pedraza, were permitted to attend religious services, although not the same services that the other prisoners attended. The reason for this different treatment is that convicted inmates awaiting transfer are perceived as "high escape risks." Thus, these inmates may participate in religious services that are held in the "security vestibule" of their cell block. Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263 (1972). We agree with the district court that the Victoria County Jail gave Pedraza a reasonable opportunity to worship.[4]

■ Finally, Pedraza alleges that in October of 1986 he was placed in solitary confinement for seven days for writing a letter to his wife, who was also an inmate at the jail. The Victoria County Jail regulations prohibit inmates from corresponding with one another by mail. Pedraza claims that his disciplinary hearing on this charge was inadequate because Captain Richard Romano, who served on the disciplinary Board that heard the complaint, was somehow involved in filing the complaint. The record demonstrates, however, that Police Officer Teresa Howard was the person who intercepted Pedraza's letter and that Officer Howard prepared the incident report and turned it over, along with the letter, to Captain Romano. Captain Romano had no other involvement in the matter before the disciplinary hearing. Thus there was no violation of the principle

set forth in *Wolff v. McDonnell*, 418 U.S. 539, 572 n. 20, 94 S.Ct. 2963, 2982 n. 20, 41 L.Ed.2d 935 ("An impartial hearing board has been required, to the extent that a member of the board may not participate in a case as an investigating or reviewing officer, or be a witness.") (citations omitted); *see also Adams v. Gunnell*, 729 F.2d 362 (5th Cir.1984). We therefore agree with the district court's judgment on this issue as well.

AFFIRMED in part and VACATED and REMANDED in part.

---

4. *Beck v. Lynaugh*, 842 F.2d 759 (5th Cir.1988) is not contrary to our holding today. There we stated that "the denial of access to religious activities ... may not appropriately be deemed frivolous." *Id.* at 761. In that case, however, no evidence was offered—as was in this case—that the plaintiff-prisoner actually was afforded any opportunity to worship.